IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAWNA IGNACIA TRUJILLO,

    Plaintiff,

vs.

    Civ. No. 00-926 JC/RLP

WILLIAM A. HALTER,
Deputy Commissioner of Social Security,[1]

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.    Plaintiff, Shawna Ignacia Trujillo, (Plaintiff herein), filed an application for Supplemental Security Income Benefits (SSI) under Title XVI of the Social Security Act, on May 28, 1997, alleging disability due to mental handicap. (Tr. 45, 50). Her application was denied at the first and second levels of administrative review, and by an Administrative Law Judge following a hearing. (Tr.27, 29-30, 166-178, 28, 35, 199-210, 10-20). Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on May 8, 2000. (Tr. 5-6.) The matter before this Court is Plaintiff's Motion to Reverse or Remand the decision of the Commissioner denying benefits. (Docket No. 10).

---

[1]William A. Halter was sworn in as Deputy Commissioner of Social Security on January 19, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, William A. Halter should be substituted for Commissioner Kenneth S. Apfel as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



## I.     Issues on Appeal

2.     Plaintiff contends that the ALJ erred at step three of the sequential evaluation process by failing to analyze her condition and find her presumptively disabled under the criteria of 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05C ("§12.05C" herein). Plaintiff also contends that the ALJ erred by failing to find her disabled at step five of the sequential evaluation process, and by failing to consult with a vocational expert.[3]

## II.     Standard of Review

3.     This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

4.     The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one

---

[3] Although Plaintiff raises this issue, she does not provide the Court with any legal analysis. Her efforts are matched by Defendant, who does not address the issue at all.

through four; the Commissioner bears the burden of proof at step five. **Id.**

### III. Analysis

#### A. The Plaintiff did not establish presumptive disability pursuant to Listing §12.05C.

5. The third step in the sequential evaluation process determines whether a claimant's impairment meets or equals the severity of an impairment set forth in the Listing of Impairments. 20 C.F.R. §416.920(d). The Listings consist of specific impairments acknowledged by the Commissioner to be of sufficient severity to preclude any gainful work activity. 20 C.F.R. §416.925. If a claimant's condition meets or equals the level of severity of a listed impairment, the claimant is conclusively presumed to be disabled.

6. Listing §12.05C presumes a claimant to be disabled if she meets a two-pronged test: (1) "[a] valid verbal, performance, or full scale IQ of 60-70" and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function." Valid testing of Plaintiff's intellectual functioning establishes that she has a verbal IQ of 64, a performance IQ of 72 and a full IQ of 67. (Tr. 162). She therefore established that she meets the first prong of §12.05C. She contends that she has established the second prong of §12.05C based on deficiencies in adaptive functioning as measured by the Vineland Adaptive Behavior Scale ("Vineland," herein). The questions posed, therefore, are (1) whether the Vineland establishes a mental impairment "in addition" to the impairment caused by Plaintiff's IQ level, and (2) if so, whether this additional impairment in and of itself causes significant work-related limitation of function.

7. The Tenth Circuit holds the criteria of §12.05C are met if the claimant establishes a "severe" physical or mental impairment apart from decreased intellectual functioning, severity being judged

3

in accord with the standards applicable at step two of the sequential evaluation process. **Hinkle v. Apfel**, 132 F.3d 1349, 1352 (10th Cir. 1997). The Administration has defined "additional and significant limitation of function" to mean "another distinct diagnosable impairment," which may be a learning disability.[4] "Childhood Disability Evaluation Issues," Social Security Administration Office of Disability, SSA Pub. No. 64-076 (March 1998) p. 49 & n.3. Accordingly, Plaintiff had the burden of establishing by medical evidence that her deficiencies in adaptive functioning were due to something other than decreased intellectual functioning in order to meet the second prong of §12.05C.

8. Plaintiff was identified as mentally handicapped at age three. (Tr. 238). At age 10 years three months speech and language testing indicated that she was functioning significantly below her chronological age, qualifying her for speech and language therapy. However, no discrete learning disability was identified. (Tr. 124-125).

9. Plaintiff was evaluated by the Albuquerque Public Schools ("APS," herein) in May 1994, when she was 14 years 10 months of age. This evaluation was performed in connection with her continuing eligibility for special education. Her reading and written language skills were then at a mid-first grade level and her math skills were at a third grade level. She was categorized as "intellectually disabled." Her auditory processing skills, receptive and expressive vocabulary, and narrative skills were "commensurate" with her ability level. No discrete learning disability or mental impairment other than "intellectually disabled" was identified. (Tr. 114-118).

---

[4]Plaintiff contends that she has been diagnosed with a learning disability, citing to Tr. 81, 101 and 114. (See Plaintiff's Reply Brief, Docket No. 12, p. 3). The Court has examined these pages of the administrative record. They clearly refer to "intellectual" not "learning" disabilities.

4

10. Plaintiff's neuromuscular development and visual-motor skills were evaluated by an occupational therapist in October 1994. (Tr. 119-121). She was also given a "Street Survival Skills Questionnaire" to measure her level of functional knowledge and skills considered important for independent living. Her tests results were summarized as follows:

> Shawna appears to be functioning within normal limits in all area (sic) touched by the Street Survival Skills Questionnaire. Her writing and drawing skills also appear to be at age appropriate levels. Shawna's neuromuscular development also appear (sic) to be within functional limits for her disability level.

(Tr. 121).

The evaluator determined that she was not in need of occupational therapy. (Tr. 121).

11. In May 1997, APS prepared an "Individualized Education Program for Transition." (Tr. 81-85). At this time, Plaintiff was attending high school special education classes. Her disability was identified as "intellectually impaired." (Tr. 81). No discrete learning disability or additional mental impairment was identified.

12. Joseph Cardillo, PhD, a clinical psychologist, evaluated Plaintiff at the request of the New Mexico Disability Determination Unit on August 27, 1997. In addition to interviewing Plaintiff and her mother, reviewing Plaintiff's past test results and conducting a mental status exam, Dr. Cardillo administered the WAIS-R, which established Plaintiff's IQ levels:

| Scale | IQ | Percentile | 90% Confidence Interval | Interpretation |
|---|---|---|---|---|
| Verbal IQ | 64 | 1.0% | 59-69 | Mildly retarded |
| Performance IQ | 72 | 3.0% | 63-81 | Borderline retarded |
| Full Scale IQ | 67 | 1.0% | 62-72 | Mildly retarded |

(Tr. 162).

Dr. Cardillo concluded that Plaintiff was functioning overall within the "Mildly Mentally Retarded"

range of cognitive abilities, but felt that additional testing was necessary before Plaintiff could be diagnosed as mentally retarded by DSM-IV criteria.[5] He recommended administering the Vineland to obtain a formal measure of Plaintiff's adaptive functioning because "While Shawna certainly has deficits in communication and language functioning, she does not appear to have sufficiently severe impairments in all areas of adaptive functioning." (Tr. 164). He concluded by stating that due to her age and relatively low functioning, she was not presently competent to handle benefit payments but "may be able to handle benefit payments at a future date with continued progress and experience." (Tr. 164). He also stated that:

> (Shawna) can concentrate and be persistent at tasks for basic types of work. She is significantly slower than average in processing and would become stressed under conditions of multiple stimulation or requiring quick responses. She is able to handle concrete tasks and would relate well to co-workers for relatively simple jobs which do not demand high degrees of verbal abilities. She is able to understand and remember basic instructions but would take somewhat longer to memorize longer instructions.

(Tr. 164).

Finally, although Dr. Cardillo identified "deficits" in comprehension and expressive language, he did not identify a discrete learning disability or mental impairment other than her low IQ.

13.     The record does not support a finding of disabled under the criteria of §12.05(C). Although Plaintiff clearly has impaired intellectual functioning, there is no evidence of an additional or "other mental impairment imposing additional and significant work-related limitation of function." Stated another way, there is substantial evidence that the Plaintiff's limitations, including limitations in

---

[5]Quoting from Dr. Cardillo's report: "According to DSM-IV criteria, a diagnosis of mental retardation must include subaverage intellectual functioning (i.e., below 70 IQ) and concurrent deficits in adaptive functioning." (emphasis in the original) (Tr. 164)

adaptive functioning, are attributed solely to her low IQ. Accordingly, the ALJ did not err by not analyzing Plaintiff's mental impairment under the criteria of Listing §12.05C.

**B.  Substantial evidence supports the ALJ determination that Plaintiff has the residual functional capacity for simple, unskilled work, and was therefore not disabled.**

14.  The ALJ found that Plaintiff's only severe impairment was the non-exertional impairment of mental retardation. Plaintiff does not contend that she has any co-existing physical impairment. The ALJ found that Plaintiff could not return to past relevant work, because she had never worked. The ALJ cited to S.S.R. 85-15 as support for his finding at step five of the sequential evaluation process that Plaintiff, even with her limited intellectual functioning, had the residual functional capacity for a "wide range of simple, unskilled work at all exertional levels." (Findings 5, 6 & 9; Tr. 16-17). The evaluation and conclusion of Dr. Cardillo, reproduced at ¶12, supra, provides substantial evidence supporting the ALJ's finding.[6]

---

[6] Although Plaintiff has documented problems with literacy, these have little significance in terms of evaluating her ability to perform unskilled work. "While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance... Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." 20 C.F.R. Pt. 404, Subp. P. App. 2, §200.00 (i).

## V.        Recommendation

15.       For these reasons, I recommend that Plaintiff's Motion to Reverse or Remand be denied, and that the decision of the Commissioner denying Plaintiff's application for Supplemental Security Income benefits be affirmed.

```
_____
RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE
```